# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **DOUG KILLOUGH, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | Civil Action Number |
| **vs.** | ) | **5:17-cv-00247-AKK** |
| | ) | |
| **PHIL MONKRESS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This case arises out of the purported breach of an agreement involving engineering support contracts between Technical Consulting Solutions, Inc. (TCS), a corporation owned and operated by Doug Killough, and All Points Logistics, LLC (APL), a corporation owned and operated by Phil Monkress.[1] TCS claims that APL failed to remit, as agreed, half the profits from the contracts TCS serviced on APL's behalf, and that subsequently APL failed to transfer those contracts to TCS upon its request. Accordingly, TCS pleads numerous state law claims against APL including, breach of contract, fraud, conversion, quantum merit, unjust enrichment, negligence, and tortious interference with actual or prospective

---

[1] For ease of reference, the court will refer to TCS as the sole plaintiff in this case and APL as the sole defendant.

business relations. APL has filed a motion to dismiss, doc. 22, and that motion is now fully briefed, docs. 34; 37, and ripe for review.[2]

## I.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'" are insufficient. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Additionally, the fraud

---

[2] APL has also filed a Motion to Strike Portions of Plaintiffs' Amended Complaint, doc. 23. APL's motion targets two discrete parts of TCS' first amended complaint. First, APL moves to strike ¶ 13 of the amended complaint—TCS' assertions that Monkress "claimed in APL's marketing materials that he was a former Navy SEAL and also that he was a Cherokee Indian . . . lies that Monkress told that were specifically intended to lure more business to APL." *Id.* at 2–3. The court declines to strike these statements at the pleading stage and will revisit the issue at the trial stage, if necessary. Second, APL moves to strike TCS' demands for attorneys' fees. *Id.* at 4. Alabama follows the general rule that "attorneys' fees are not recoverable as damages, in the absence of a contractual or statutory duty, and a few other exceptions on equitable principles." *Porter v. Hook*, 554 So. 2d 382, 386 (Ala. 1989) (citation omitted). The "'special-equity' exception allows the court to award an attorney fee in a situation when the attorney's efforts have created a common fund out of which fees will be paid or those efforts have conferred a benefit on the general public." *Hudman v. Wesson*, 792 So. 2d 1113, 1117 (Ala. Civ. App. 2001). TCS' complaint neither alleges the existence of a contractual or statutory basis for attorneys' fees nor indicates that the "special equity" exception applies. Accordingly, TCS' claim for attorneys' fees is due to be stricken.

claims TCS asserts are subject to the heightened pleading standard imposed by Rule 9(b) of the Federal Rules of Civil Procedure. Under Rule 9(b), a plaintiff must allege in her complaint "(1) precisely what statements or omissions were made in which documents . . .; (2) the time and place of each such statement and the person responsible for making . . . them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. When evaluating a motion brought under Rule 12(b)(6), the court accepts "the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). However, "[t]o survive a motion to dismiss, a complaint must . . . 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, the complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 (explaining that "[f]actual

allegations [included in the complaint] must be enough to raise a right to relief above the speculative level."). Ultimately, the line between possibility and plausibility is a thin one, and making such a determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II.  <u>FACTS</u>

Killough worked for Booz Allen Hamilton leading a team of engineers who provided engineering services to Boeing and Northrop Grumman in support of missile defense contracts those companies held with the Federal government. Doc. 20 at 1, 3. When Booz Allen withdrew from this market, Killough and a fellow employee decided to start a new company, TCS, to enable them to continue servicing the Boeing and Northrop Grumman contracts. *Id.* at 3–4. As part of the transition process, Killough met with Boeing representatives who recommended that TCS partner with a larger company to easily gain access to logistical and administrative support services. *Id.* at 4. A Boeing employee apparently recommended APL for this purpose and provided Killough with a business card for APL's CEO and owner, Monkress. *Id.* At the time, APL was a contractor primarily focused on providing various logistical services to the United States. *Id.*

Shortly after the recommendation, Killough contacted Monkress and negotiated an agreement to run TCS' engineering contracts through APL. *Id.* at 5.

The agreement specified that APL would receive half the profits from TCS-related contracts, primarily those with Boeing and Northrop Grumman, and that APL would subcontract the work directly to TCS once TCS had the infrastructure in place to service the contracts on its own. *Id.* However, after realizing that Boeing did not allow for second-tier subcontracts, the parties orally agreed that APL would simply transfer the contracts to TCS at Killough's option. *Id.*

Under the agreement, Killough received quarterly profit-sharing payments from APL. *Id.* at 7. APL certified that these payments reflected Killough's share of the profits generated by the TCS contracts. *Id.* Although APL was not contractually obligated to provide Killough with a full accounting of quarterly costs and revenues, *id.*, Killough alleges that APL routinely provided profit statements, subject to Monkress' review and approval, containing that information. *Id.* at 7–8. Killough, who did not have direct access to APL's books, alleges that APL repeatedly assured him that the profit statements were accurate. *Id.* at 8. Eventually, however, Killough learned about a second set of books which revealed a higher profit margin than what APL reported in 2014, and which purportedly suggested that APL owed Killough, at least, an additional $750,000. *Id.* at 9–10.

Additionally, in 2014, when Killough attempted to exercise his option to take over the TCS contracts from APL, Monkress "fired" Killough and refused to turn over the contracts as previously agreed. *Id.* at 10–11. However, Monkress

quickly rescinded the discharge after TCS' clients and employees allegedly expressed their dissatisfaction. *Id.* at 11–12. At this time, Monkress purportedly orally reaffirmed the parties' agreement to share profits from the TCS-related contracts equally and to transfer the contracts to TCS at Killough's option. *Id.* at 12. Nonetheless, Monkress purportedly continued to improperly withhold profits, and eventually discharged Killough for a second time, again declining to transfer the contracts to TCS. *Id.*

## III. <u>DISCUSSION</u>

TCS raises multiple claims against APL, including (1) breach of contract, (2) fraud/misrepresentation, (3) fraud/suppression, (4) fraud in the inducement, (5) promissory fraud, (6) quantum merit, (7) conversion, (8) unjust enrichment, (9) tortious interference with actual or prospective contractual and/or business relations, and (10) negligence. Because APL moves for the dismissal of each claim, the court will address the claims individually, with the exception of the various fraud claims which the court addresses as a group.[3]

---

[3] APL argues also that the complaint is a "shotgun pleading" subject to summary dismissal. There is little doubt that the complaint qualifies as the most common type of shotgun pleading—"a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). Shotgun pleadings fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. However, dismissal on this basis requires a complaint so deficient that "'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" *Id.* at 1325 (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir.

## A. Breach of Contract—Count I

Under Alabama law, a breach of contract claim requires proof of "(1) the existence of a valid contract binding the parties in the action, (2) [the plaintiff's] own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *S. Med. Health Sys., Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995). APL argues that the complaint fails to adequately allege the existence of a valid contract. Specifically, APL asserts that it entered an agreement solely with Killough and that the agreement did not involve Monkress or TCS. The court is sympathetic to this argument. As discussed in footnote 3, the complaint does not clearly identify the parties involved in particular claims and frequently refers to individual parties and the corporate entities they own and control interchangeably. However, under Federal Rule of Civil Procedure 8(a)(2), a pleading need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the [complaint] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which

---

1996)). While TCS' complaint is not as clear as it might be, it includes specific factual allegations supporting each count and provides enough substance to enable APL to "discern what [TCS] is claiming and to frame a responsive pleading." *Anderson*, 77 F.3d at 366. But, the court recognizes that the complaint's interchangeable references to corporate parties and their principle officers creates a high likelihood of confusion between the various claims being asserted. Rule 12(e) of the Federal Rules of Civil Procedure allows the court, upon request, to order the filing of a more definite statement if a pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." As the complaint presently stands, it is simply too vague to enable APL to adequately respond. Accordingly, to the extent TCS' claims survive APL's motion to dismiss, TCS must file a more definite statement specifically identifying the entity asserting a particular claim, the entity subject to the claim, and the factual basis for those assertions.

it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555); *see also Brooks v. Ross*, 578 F.3d 574, 580–81 (7th Cir. 2009) (explaining that the court in *Iqbal* was not abandoning notice pleading but instead "admonishing those plaintiffs who merely parrot the statutory language of the claims they are pleading").  In that respect, TCS has sufficiently pleaded the existence of an agreement binding at least two of the parties to this action.  Thus, the court declines to dismiss the breach of contract claim on this basis.  However, because TCS fails to adequately identify the parties to the alleged agreement, as discussed in footnote 3, TCS must rectify this deficiency by filing a more definite statement pursuant to Rule 12(e).[4]

APL also argues that the alleged oral contract is void by operation of Alabama's Statute of Frauds.  Generally, an oral agreement is void if "by its terms, [it] is not to be performed within one year from the making thereof." Ala. Code § 8-9-2(1).  However, "a contract is not within the Statute of Frauds unless it cannot possibly be performed within a year." *Dean v. Myers*, 466 So. 2d 952, 954 (Ala.

---

[4] Generally, a corporation is "a legal entity existing separate and apart from the persons composing it." *Hill v. Fairfield Nursing & Rehab. Ctr., LLC*, 134 So. 3d 396, 407 (Ala. 2013) (quotation omitted).  It is true that, "in an appropriate case . . . a corporation and the individual . . . owning [it] . . . will be treated as identical," but this requires some showing that "the person controlling the corporation [is] subverting it to [her] personal use by the conduct of its business in a manner to make it merely [her] instrumentality." *Id.* (quotations omitted).  TCS has alleged no factual basis for piercing the corporate veil and imposing individual liability on Monkress for the actions taken by APL.  Nonetheless, TCS repeatedly makes claims against both APL and Monkress interchangeably.  As discussed, this issue, combined with the shotgun nature of the underlying complaint, renders TCS' pleading too indefinite to enable APL to appropriately respond.

1985) *overruled on other grounds by Bruce v. Cole*, 854 So. 2d 47 (Ala. 2003)).

Thus, if there is "a reasonable possibility of performance within a year," the Statute

of Frauds does not apply. *Id.* This is precisely the case here, where the plain terms

of the oral agreement, i.e. that "APL would 'novate'/transfer the contracts over to

TCS once TCS and Killough felt that TCS was ready," do not exclude performance

within a year. Doc. 20 at 5. Indeed, the complaint suggests that the parties could

complete the necessary arrangements for the transfer in just a few months. *Id.* at

10–11. Therefore, the Statute of Frauds does not bar TCS' contract claim.

### B. *Fraud—Counts II–V*

The complaint also pleads four separate fraud claims: (1) fraudulent

misrepresentation, Count II; (2) fraudulent suppression, Count III; (3) fraudulent

inducement, Count IV; and (4) promissory fraud, Count V. The fraudulent

inducement and promissory fraud claims center on the formation of the parties'

contract, alleging that APL never intended to perform its contractual promises and

that TCS relied on those promises in entering the agreement. *See id.* at 17–20.

The misrepresentation and suppression claims, on the other hand, focus on APL's

alleged failure to properly remit profits under the contract, and its provision of

purportedly misleading financial documents to TCS over the course of its

performance. *Id.* at 14–16. APL challenges all four fraud claims on numerous

grounds which the court addresses below.

**1. Whether the Fraud Claims are Barred by the Statute of Limitations**

APL asserts that the fraud in the inducement, Count IV, and the promissory fraud, Count V, claims are barred by Alabama's two year limitations period. *See* Ala. Code § 6-2-38(l); *Bryant Bank v. Talmage Kirkland & Co.*, 155 So. 3d 231, 235–36 (Ala. 2014). A fraud claim accrues when "the aggrieved party discovers or, in the exercise of reasonable care, should have discovered, the facts constituting the fraud." *Wheeler v. George*, 39 So. 3d 1061, 1081 (Ala. 2009). Although dismissal at the pleading stage based on the statute of limitations is disfavored, it is proper "if noncompliance with the statute of limitations is apparent on the face of the complaint." *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003). Such is the case here, at least in part.

TCS' fraudulent inducement and promissory fraud claims, as explained above, are primarily based on APL's purported failure to transfer TCS-related contracts to TCS. The parties allegedly reached an oral agreement on this issue in 2010, and APL breached that agreement by refusing to transfer the contracts to TCS in November 2014. Docs. 20 at 4–5, 10–11; 22 at 20. However, shortly after the November 2014 incident, APL purportedly reaffirmed the parties' agreement, before again failing to transfer the contracts in the fall of 2015. Doc. 20 at 11–12. Based on these allegations, it is plain that the facts supporting a potential fraud allegation against APL stemming from the original 2010 agreement accrued, at the

latest, in November 2014, more than two years before Killough filed this lawsuit. Accordingly, to the extent these claims rely on the 2010 agreement they are barred.[5]  However, to the extent these claims arise from the "second" agreement, they arguably did not accrue until 2015, when APL purportedly failed to transfer the contracts to TCS for a second time.  Thus, it is not apparent from the face of the complaint that the fraud claims based on the alleged oral reaffirmation of the agreement in 2014 are time barred, and the court declines to dismiss those claims on limitations grounds.[6]

## 2. Whether the Fraud Claims are Sufficiently Distinct from the Breach of Contract

APL also moves to dismiss all four fraud claims as insufficiently distinct from the underlying breach of contract action.  In Alabama, "[a] mere breach of a contractual provision is not sufficient to support a charge of fraud." *Brown-Marx Assocs., Ltd. v. Emigrant Sav. Bank*, 703 F.2d 1361, 1370–71 (11th Cir. 1983) (citing *McAdory v. Jones*, 71 So. 2d 526, 528 (Ala. 1954)).  Indeed, more broadly, the "failure to perform a contract obligation is not a tort."  *C & C Prods., Inc. v. Premier Indus. Corp.*, 275 So. 2d 124, 186 (Ala. 1972).  Thus, "to assert a fraud

---

[5] Although TCS has requested an opportunity to amend its complaint if the court finds the included allegations insufficient, doc. 34 at 2, an amendment would be futile here.  Accordingly, the court declines to allow TCS to replead these claims.  *See Maynard v. Bd. of Regents*, 342 F.3d 1281, 1287 (11th Cir. 2003).

[6] APL also seeks to dismiss the negligence claim, Count X, and the tortious interference claim, Count IX, on limitations grounds.  The court need not reach those arguments as both claims are due to be dismissed on other grounds, as discussed *infra*.

claim that stems from the same general facts as one's breach-of-contract claim, the fraud claim must be based on representations independent from the promises in the contract and must independently satisfy the elements of fraud." *Hunt Petroleum Corp. v. State*, 901 So. 2d 1, 10–11 (Ala. 2004) (Houston, J., concurring) (emphasis omitted); *see also Muncher v. NCR Corp.*, No. 2:16-CV-782-VEH, 2017 WL 2774805, at *16–17 (N.D. Ala. June 27, 2017) (noting that although Justice Houston's concurrence in *Hunt* is non-binding it is still a "correct statement[] of Alabama law").

The claims for fraudulent misrepresentation, Count II, and fraudulent suppression, Count III, easily exceed this threshold showing. The complaint makes clear that both of these claims turn on APL's provision of false and misleading profit statements to TCS and specifically provide that the "Agreement did not require Defendants to provide a full accounting of the costs and profits associated with the TCS-related contracts." Doc. 20 at 7. Accordingly, neither claim is intertwined with APL's contractual obligations, and TCS has adequately "allege[d] conduct independent from the promises in the contract" to support both claims. *Muncher*, 2017 WL 2774805, at *18.

The question is much closer with respect to the claims for fraudulent inducement, Count IV, and promissory fraud, Count V. TCS alleges only that APL's promises to perform its contractual obligations, e.g., transferring the TCS-

related contracts to TCS upon request and paying TCS half the profits from the TCS-related contracts, induced TCS to enter the agreement. Doc. 20 at 17–19. TCS further alleges that at the time APL made these representations it knew they were false, and that APL never intended to comply with the parties' agreement. *Id.* at 17, 19. These factual allegations are essentially identical to those supporting the breach of contract claim already discussed,[7] and, thus, are insufficiently "independent from the promises in the contract" to sustain a fraud claim. *Hunt Petroleum*, 901 So. 2d at 11.

Moreover, a failure to perform a promise "is not in itself evidence of intent to deceive at the time the promise was made." *P&S Bus., Inc. v. S. Cent. Bell Tel. Co.*, 466 So. 2d 928, 930 (Ala. 1985). There must be an allegation of some conduct, other than a failure to perform, to allow the court to plausibly "infer that at the time the promise was made the defendant had no intention of performing." *Id.* Therefore, because TCS has failed to allege specific conduct, independent from APL's purported the failure to perform its contractual obligations, to establish that

---

[7] Additionally, with respect to the promissory fraud claim, TCS alleges that the provision of purportedly false profit statements supports an interference that APL never intended to keep its promise of remitting half the profits from TCS-related contracts to TCS. Doc. 20 at 19. But, the purportedly false profit statements have little bearing on whether APL, at the time the parties reached the purported oral agreement, "had the intention not to perform the act promised." *Padgett v. Hughes*, 535 So. 2d 140, 142 (Ala. 1988). Moreover, as previously discussed, this claim is timely only as to APL's purported reaffirmation of the parties' contract in 2014. There is no allegation that profit statements provided after that date were false. Doc. 20 at 9 n.1. Accordingly, the complaint provides no basis, other than APL's purported failure to perform, to infer that APL intended to deceive TCS at the relevant time.

APL intended to deceive TCS at the time the agreement was made, or to show the existence of representations, other than APL's contractual promises, capable of supporting an independent fraud claim, the motion to dismiss the fraudulent inducement and promissory fraud claims, Counts IV and V, is due to be granted. Because it is conceivable that TCS can replead to show cognizable claims, consistent with its general request, the court will allow it to replead these claims.

### 3. Whether the Surviving Fraud Claims are Adequately Pleaded

The court turns next to APL's contention that the two surviving fraud claims, misrepresentation, Count II, and suppression, Count III, fail to satisfy the heightened pleading requirements established by Rule 9(b) of the Federal Rules of Civil Procedure.[8]

### a) Fraud/Misrepresentation—Count II

Fraudulent misrepresentation requires proof "(1) that the representation was false, (2) that it concerned a material fact, (3) that the plaintiff relied on the false representation, and (4) that actual injury resulted from that reliance." *Spooner v. State Farm Mut. Auto. Ins. Co.*, 709 So. 2d 1157, 1160 (Ala. 1997) (quotation omitted). Importantly, the plaintiff must show reliance such "that the misrepresentation actually induced the injured party to *change its course of*

---

[8] Rule 9(b) requires that the complaint allege "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making . . . them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *FindWhat Inves'r Grp.*, 658 F.3d at 1296.

*action.*" *Exxon Mobil Corp. v. Ala. Dep't of Conservation & Nat. Res.*, 986 So. 2d 1093, 1116 (Ala. 2007) (quotation omitted) (emphasis original).

To support its misrepresentation claim, TCS alleges that APL provided extra-contractual statements of profit and loss in connection with APL's obligation to pay TCS half the profits from TCS-related contracts. Doc. 20 at 5, 14–15. TCS further alleges that APL repeatedly assured it that the provided profit statements were accurate. *Id.* at 8. Purportedly, these assurances, and the false statements themselves, caused TCS to continue its relationship with APL and prevented TCS from discovering APL's systematic underpayments. *Id.* 14. These allegations, however, are fatally deficient under Rule 9(b) because they fail to establish, with particularity, "precisely what statements or omissions were made in which documents." *FindWhat Inv'r Grp.*, 658 F.3d at 1296. Specifically, TCS provides no allegations identifying false information included in particular profit statements beyond the vague assertion that there was a "large discrepancy" in "costs" between the profit statements and other accounting information TCS purportedly received. Doc. 20 at 9–10, 15. This type of vague, generalized allegation of wrongdoing is insufficient to meet the heightened pleading standard for fraud claims. *See, e.g.*, *United States ex rel. Clausen v. Lab Corp. of Am., Inc.*, 290 F.3d 1301, 1312 (11th Cir. 2002) (dismissing, in the False Claims Act context, a fraud claim because the "amounts of [purportedly fraudulent] charges were not identified"). In light of

TCS' request to replead its claims, however, the court will give it another opportunity to adequately plead the fraudulent misrepresentation claim.

### b) Fraud/Suppression—Count III

A fraudulent suppression claim requires a showing: "1) that the defendant had a duty to disclose material facts, 2) that the defendant concealed or failed to disclose those facts, 3) that the concealment induced the plaintiff to act, and 4) that the plaintiff's action resulted in harm to the plaintiff." *Mason v. Chrysler Corp.*, 653 So. 2d 951, 954 (Ala. 1995). The inquiry begins with consideration of whether there is "a relationship [between the parties] sufficient to give rise to a duty to disclose." *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 677 (Ala. 2001). Significant here, although "mere silence in the absence of a duty to disclose is not fraudulent," a duty to disclose can be found "when specific information is requested." *Aliant Bank v. Four Star Invs., Inc.*, —So. 3d—, 2017 WL 1787935, at *24 (Ala. May 5, 2017) (quotation omitted).

TCS' fraudulent suppression claim largely parallels its misrepresentation claim. TCS alleges that, although APL had a duty to ensure the accuracy of the profit statements it voluntarily provided, those statements inflated the costs associated with the TCS-related contracts resulting in lower payments to TCS. Doc. 20 at 10, 16. Purportedly, these false statements induced TCS to continue to perform its obligations under the agreement. *Id.* at 16. As to APL's argument that

it had no duty to disclose, the complaint alleges that, at least on some occasions, TCS requested profit statements from APL, an action sufficient to create such a duty under Alabama law. *Id.* at 7; *Bank of Red Bay v. King*, 482 So. 2d 274, 285 (Ala. 1985) (noting only that "no duty to disclose exists when information is not requested"). Indeed, in Alabama when a party voluntarily undertakes to speak on a subject "[she] is bound not only to state truly what [she] tells, but also not to suppress or conceal any facts within [her] knowledge which will materially qualify those stated." *See Jackson Co. v. Faulkner*, 315 So. 2d 591, 600 (Ala. Civ. App. 1975) (quotation omitted). Consequently, TCS has adequately alleged facts to enable the court to plausibly infer that APL had a duty to provide accurate and complete profit statements to TCS.

However, TCS' fraudulent suppression claim fails to satisfy Rule 9(b)'s heightened pleading requirements. To meet this standard, TCS is required to allege with particularity, among other things, "what facts were not disclosed." *RC Lodge, LLC v. SE Prop. Holdings, LLC*, No. 12-0112-WS-M, 2012 WL 2898815, at *3 (S.D. Ala. July 16, 2012). Relevant here, although TCS maintains that the profit statements were incorrect, it provides no specific examples identifying the purported information APL should have disclosed but did not. Instead, the complaint alleges only the existence of a discrepancy in reported "costs" between the provided profit statements and allegedly accurate information disclosed

elsewhere.  Doc. 20 at 9–10.  These conclusory allegations are insufficient to satisfy Rule 9(b), and, accordingly, the court concludes that the fraudulent suppression claim is inadequately pleaded.  However, consistent with TCS' request, doc. 34 at 2, the court will afford TCS another opportunity to replead this claim.

### C. Quantum Merit and Unjust Enrichment—Counts VI and VIII

In its motion to dismiss, APL primarily argues that, as equitable doctrines relying on the existence of an implied contract, TCS is precluded from raising quantum merit or unjust enrichment claims in conjunction with a claim for breach of contract.  Under Alabama law, "where an express contract exists between two parties, the law generally will not recognize an implied contract regarding the same subject matter."  *Kennedy v. Polar-BEK & Baker Wildwood P'ship*, 682 So. 2d 443, 447 (Ala. 1996); *Carroll v. LJC Def. Contracting, Inc.*, 24 So. 3d 448, 459 (Ala. Civ. App. 2009) (same).  Still, while TCS may not be able to recover on both theories, the Federal Rules explicitly allow for pleading inconsistent claims in the alternative.  *See* Fed. R. Civ. P. 8(d) (explaining "[a] party may set out . . . statements of a claim . . . alternatively or hypothetically . . . [and it] may state as many separate claims . . . as it has, regardless of consistency"); *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1273 (11th Cir. 2009) (explaining that the "Rule 8(d) . . . expressly permits the pleading of both alternative and inconsistent

claims"). Pleading alternative theories is justified here where the validity of the contract may be contested. *See Hemispherex Biopharma, Inc. v. Mid-South Capital, Inc.*, 690 F.3d 1216, 1227–28 (11th Cir. 2012) (noting that equitable claims are viable as alternatives to a breach of contract claim when the existence of a contract is contested and that while the plaintiff "cannot recover . . . under both [theories] . . . [she] can plead these claims in the alternative and then elect at trial under which remedy [she] wants to proceed").

Also, contrary to APL's contention that TCS fails to plausibly allege specific facts supporting these claims, the complaint indicates that, over a five year period, TCS provided and APL accepted a variety of services, including "obtaining contracts . . . [and] fulfillment of those contracts." Doc. 20 at 20. TCS also alleges that APL failed to "provide a reasonable amount" of compensation for these services. *Id.* This suffices to plead a claim for quantum merit. *See, e.g.*, *Brannan & Guy, P.C. v. City of Montgomery*, 828 So. 2d 914, 920 (Ala. 2002) (explaining that "the law implies a promise on the party knowingly accepting the benefit of services provided by another to pay a reasonable value for those services"); *Mantiply v. Mantiply*, 951 So. 2d 638, 656 (Ala. 2006) (noting that to prevail on a quantum merit claim "the plaintiff must show that [she] had a reasonable expectation of compensation for [her] services").

Like quantum merit, unjust enrichment is an equitable theory of quasi-contract which permits "the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another." *Mantiply*, 951 So. 2d at 654 (quotation omitted). Here, the same factual basis underpinning its claim for quantum merit also plausibly establishes that APL unjustly enriched itself by retaining a benefit, the TCS-related contracts, without providing reasonable value in return. Doc. 20 at 22.[9]

## D. Conversion—Count VII

In its motion to dismiss the conversion claim, Count VII,[10] APL primarily argues that the complaint fails to adequately establish what property was purportedly converted, which defendant converted the property, and which plaintiff had either title to the property or a right of immediate possession. These contentions are unavailing. The complaint specifically identifies the property in question as "the TCS-related contracts with Boeing and with other entities," and

---

[9] Contrary to APL's contention, an action for unjust enrichment does not require the retention of "money." *See, e.g.*, *Welch v. Montgomery Eye Physicians, P.C.*, 891 So. 2d 837, 843–44 (Ala. 2004) (discussing claim for unjust enrichment based on retention of a doctor's personal practice); *Matador Holdings, Inc. v. HoPo Realty Invs., LLC*, 77 So. 3d 139, 145–46 (Ala. 2011) (discussing unjust enrichment in the context of provision of materials to a construction project).

[10] Conversion consists of the "wrongful exercise of dominion over property in exclusion or defiance of a plaintiff's rights, where said plaintiff has general or special title to the property or the immediate right to possession." *Ott v. Fox*, 362 So. 2d 836, 839 (Ala. 1978). It requires "a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property." *Crown Life Ins. Co. v. Smith*, 657 So. 2d 821, 823 (Ala. 1994). Significantly, under certain circumstances, conversion can encompass the "wrongful taking of intangible property." *Alfa Mut. Ins. Co. v. Veal*, 622 So. 2d 1292, 1296 (Ala. 1993).

the contracts, at least in part, as "the Boeing and Northrop Grumman contracts." Doc. 20 at 5, 21. Allegedly, TCS had an immediate right to possession of the contracts based on the parties' agreement, which required APL to transfer the contracts to TCS "once . . . Killough felt that TCS was ready to handle the contracts on its own." *Id.* at 5. Further, although TCS exercised its right to the immediate possession of the contracts twice, "Monkress did not transfer the contracts" on either occasion. Doc. 20 at 10–12. Consistent with Rule 8(a)(2), TCS has provided a "short and plain statement of the claim showing that the pleader is entitled to relief." Therefore, TCS has put forward sufficient factual allegations to give APL fair notice of the grounds underpinning this claim, and APL's motion to dismiss this claim is due to be denied.[11]

### E. Tortious Interference with Actual or Prospective Contractual and/or Business Relations—Count IX

A claim for tortious interference with a business or contractual relationship requires: "(1) the existence of a protectable business relationship; (2) of which the

---

[11] To the extent the conversion claim can be read to support a claim based on APL's purported failure to pay the profits due under the parties' agreement, "an action for conversion of money will not lie unless the money is specific and capable of identification." *SouthTrust Bank v. Donely*, 925 So. 2d 934, 939–40 (Ala. 2005) (quotations omitted). In other words, Alabama law requires "an obligation to deliver the specific pieces of the money in question or money that has been specifically sequestered, rather than a mere obligation to deliver a certain sum." *Id.* at 940 (quotations omitted). Here, a claim for conversion of money would involve only APL's purported obligation to pay TCS a certain sum. There is no allegation that the specific money to be paid was somehow earmarked or otherwise specifically sequestered and capable of identification. Accordingly, any conversion claim based on improperly withheld profits fails as a matter of law.

defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *White Sands Grp., LLC v. PRS II LLC*, 32 So. 3d 5, 14 (Ala. 2009). Critically, "it is essential to a claim of tortious interference with contractual relations that the plaintiff establish that the defendant is a third party, i.e. a stranger to the contract . . . because a party to a contract cannot, as a matter of law, be liable for tortious interference with the contract." *Tom's Foods, Inc. v. Carn*, 896 So. 2d 443, 454 (Ala. 2004) (quotation omitted). Indeed, a defendant remains "a party in interest to a [business or contractual] relationship if the defendant has any beneficial or economic interest in, or control over, that relationship." *Waddell & Reed, Inc. v. United Inv'rs Life Ins. Co.*, 875 So. 2d 1143, 1154 (Ala. 2003).

Here, the complaint belies a finding that APL was a "stranger" to TCS' business relationships. By TCS' own contention, "any TCS contracts brought in by Killough . . . would be run through APL," a contention further supported by the allegation that "Boeing did not allow second-tier subcontracts." Doc. 20 at 5. The plain implication of these allegations is that the parties agreed that TCS' clients would directly enter into agreements with APL. Thus, to the extent that APL was a party to all of the TCS-related contracts, it cannot, as a matter of law, tortuously interfere with those agreements or relationships. And, even if APL was not a party to the TCS-related contracts, the complaint reveals that APL had a significant

economic interest in the business relationships at issue since it purportedly "made a significant profit off of the TCS contracts." *Id.* at 7. Indeed, by the time APL purportedly refused to transfer the TCS-related contracts, APL had engaged in contractual/business relationships with TCS' purported clients for more than three years. *Id.* at 4-5, 10–11. That TCS' relationship with these entities predated APL's is of no consequence to the question of whether APL was a stranger to those relationships at the time of the alleged tortious interference, and TCS has provided no argument to the contrary. Therefore, TCS' claim for tortious interference fails as a matter of law.[12]

### F. Negligence—Count X

APL moves to dismiss the negligence claim, Count X, contending that the claim sounds in contract rather than tort. In Alabama, "the line of distinction between actions in tort and contract is thin and often nebulous." *Hamner v. Mut. of Omaha Ins. Co.*, 270 So. 2d 87, 90 (Ala. Civ. App. 1972). Put simply, "the breach of contract in *not performing* the obligation there expressed, or not doing it in the way specified, is not in tort . . . [b]ut if [performance is undertaken], [the] *performance may be negligent*, giving rise to a tort." *Vines v. Crescent Transit*

---

[12] The claim also fails in light of TCS's failure to respond to this part of APL's motion. *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (noting that the "failure to brief and argue [an] issue during the proceedings before the district court is grounds for finding that the issue has been abandoned"). For this reason, and because any amendment would prove futile on the "stranger" issue, the court will not afford TCS another opportunity to replead this claim.

*Co.*, 85 So. 2d 436, 439 (Ala. 1955) (quotations omitted) (emphasis original). In other words, there is a possibility that a negligent performance of a contractual duty will result in both a breach of contract and, possibly, a tort. *Hamner*, 270 So. 2d at 90. In these instances, involving misfeasance rather than nonfeasance, Alabama law requires courts to determine whether the action sounds in tort or contract by looking to the "gravamen of the complaint." *Id.* If the source of the duty is the "general duty of care owed to everyone," the action sounds in tort, but if "the duty allegedly breached arises from the contract," the action sounds in contract. *Cooper v. Sw. Marine & Gen. Ins. Co.*, No. 2:13-cv-1651-KOB, 2014 WL 769394, at *12–13 (N.D. Ala. Feb. 26, 2014). Ultimately, "a negligent failure to perform a contract . . . is but a breach of the contract." *Vines*, 85 So. 2d at 440.

The negligence claims asserted here generally sound in contract, and do not support an independent claim for negligence. Specifically, with regard to APL's purportedly negligent failure to transfer the TCS-related contracts to TCS, TCS fails to allege any independently negligent actions related to the transfer. This claim is simply an allegation of nonfeasance, i.e., that APL failed to transfer the contracts as it was purportedly obligated to do. Doc. 20 at 25; *see Hamner*, 270 So. 2d at 90 (noting that if an allegation involves a "failure or refusal to perform a promise the action is in contract").

The question is more complicated, however, with respect to TCS' claim that APL negligently calculated the profits generated by the TCS-related contracts resulting in underpayments to TCS. Doc. 20 at 25. This allegation suggests misfeasance rather than nonperformance. However, APL's duty to remit half the profits from TCS-related contracts to TCS arises solely from the parties' agreement. *Id.* Thus, the court concludes that the gravamen of TCS' complaint sounds in contract and fails to state an independent negligence claim as a matter of law. *See, e.g.*, *Water Works Bd. of City of Birmingham v. Ambac Fin. Grp., Inc.*, 534 F. App'x 817, 821 (11th Cir. 2013) (applying Alabama law and explaining that since the only possible source for a duty is contract the plaintiff's claim sounds in contract law rather than tort); *Blake v. Bank of Am., N.A.*, 845 F. Supp. 2d 1206, 1210 (M.D. Ala. 2012) (explaining that plaintiff's negligence claims were due to be dismissed because the duty at issue arose from a mortgage note and "not from the duty of reasonable care generally owed to members of the public").[13] Because

---

[13] TCS argues that "[w]hen the contract does not in terms require reasonable care in doing the act stipulated to be done, the law imposes a duty-but does not imply a contract-to exercise due care in doing the act." *Garig v. East End Mem'l Hosp.*, 182 So. 2d 852, 854 (Ala. 1966) (emphasis omitted). As such, TCS argues that the contract implicitly required APL to remit half the profits flowing from the TCS-related contracts it serviced using reasonable care, a duty flowing not from the contract but from ordinary negligence principles. This argument fails to consider the express rationale of the *Garig* opinion, which specifically applies to instances where there is a breach of the "implied duty not to negligently cause [injury during performance]." *Id.* at 854. Here, the relationship between the parties is a contractual one; "that is to say, the duties and breaches alleged . . . would not exist but for the contractual relationship between the parties." *U.S. Bank Nat'l Ass'n v. Shepherd*, 202 So. 3d 302, 314 (Ala. 2015) (quotation omitted). Accordingly, "the proper avenue for seeking redress . . . is a breach-of-contract claim." *Id.*

this claim fails as a matter of law, the court concludes an amendment would be futile and will not afford TCS another opportunity to replead this claim.

## IV. <u>CONCLUSION AND ORDER</u>

To recap, the motion to strike, doc. 23, is **GRANTED** solely as to the claim for attorneys' fees. The court **GRANTS** APL's motion to dismiss, doc. 22, with respect to the fraud claims, Counts II–V, the claim for tortious interference, Count IX, and the negligence claim, Count X. Except for those claims where the court has specifically found that repleading would be futile, TCS may replead the dismissed claims. Finally, consistent with footnotes 3 and 4, the court **ORDERS** TCS, in its amended complaint which is due by August 15, 2018, to file a more definite statement pursuant to Rule 12(e) with respect to all surviving claims. In all other respects, APL's motion, doc. 22, is **DENIED**.

In light of this ruling, the stay issued on May 11, 2017, doc. 31, is **LIFTED**.

**DONE** the 1st day of August, 2018.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE