FILED
2019 Apr-17 PM 03:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| DOUG KILLOUGH and TECHNICAL CONSULTING SOLUTIONS, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>PHIL MONKRESS and ALL POINTS LOGISTICS, LLC,<br><br>Defendants. | Civil Action Number<br>5:17-cv-00247-AKK |

## MEMORANDUM OPINION AND ORDER

This action arises from the alleged breach of a purported oral agreement between Doug Killough, the owner of Technical Consulting Solutions, Inc. ("TCS"), and Phil Monkress, the owner and CEO of All Points Logistics, LLC ("APL"). Doc. 41. The court previously dismissed the fraud claims and gave Killough and TCS leave to amend those claims. Doc. 39. Killough and TCS have complied. Doc. 41. Monkress and APL have now moved to dismiss the repleaded fraud claims, doc. 42, contending that the plaintiffs fail to allege fraud with particularity and that the promissory fraud claim is not sufficiently distinct from the breach of contract claim. *See* doc. 42. For the reasons explained below, the motion is due to be granted solely as to the promissory fraud claim.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'" are insufficient. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). Additionally, fraud claims are subject to the heightened pleading standard imposed by Rule 9(b) of the Federal Rules of Civil Procedure. Under Rule 9(b), a plaintiff must allege "(1) precisely what statements or omissions were made in which documents . . . ; (2) the time and place of each such statement and the person responsible for making . . . them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. When evaluating a motion brought under Rule 12(b)(6), the court accepts "the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). However, "[t]o survive a motion to dismiss, a complaint must . . . 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, the complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 (explaining that "[f]actual allegations [included in the complaint] must be enough to raise a right to relief above the speculative level.").

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

Killough worked at Booz Allen Hamilton and led a team that provided engineering services to Boeing and Northrop Grumman for their missile defense contracts. Doc. 41 at 3-4. When Booz Allen pulled out of that market, Killough

---

[1] The court adopts and incorporates by reference the facts set forth in its prior Memorandum Opinion and Order. *See* doc. 39 at 4-6.

started TCS and began discussions with Boeing and Northrup Grummon about having TCS service their missile defense contracts. *Id.* at 4. An employee at Boeing suggested that Killough and TCS partner with a larger company, and suggested that Killough contact Monkress to discuss partnering with APL. *See id.* at 4-5. Killough and Monkress then negotiated an agreement under which Killough would work for APL to service the Boeing and Northrup Grummon contracts and other contracts brought to APL by Killough (the "TCS-related contracts"). *Id.* at 5. In addition, the parties reached an oral agreement "under which Killough would receive 50% of the profits from the TCS-related contracts, [and] APL also agreed that it would eventually subcontract the work to TCS once TCS was ready to service the TCS-related contracts by itself." *Id.* at 6. When the parties learned that APL could not subcontract the work, Killough and APL agreed that APL would transfer the contracts to TCS when TCS was ready. *Id.* at 7.

According to TCS, Killough received profit-sharing payments each quarter that APL and Monkress represented were equal to half of the profit from the TCS-related contracts. *Id.* at 8. Although it was not required by the parties' agreement, APL and Monkress also provided Killough with profit statements that outlined the income and costs associated with the contracts. *Id.* at 8. According to TCS and Killough, the APL-generated profit statements overstated the fringe benefits, overhead costs, and general and administrative costs associated with the TCS-

4

related contracts. *Id.* at 12. The statements also reflected a higher "WRAP rate" than the "rate provided to contracts to procure the TCS-related contracts." *Id.*[2] Killough and TCS allege that they learned of the purported misrepresentations in the profit statements after learning that APL kept a second set of books "that more accurately detailed the costs and income for the TCS-related contracts" and after talking with APL's office manager about the costs associated with the contracts. *Id.* at 10-11. By overstating the costs, Monkress and APL kept more than their share of the profits they were entitled to under the parties' Agreement. *Id.* at 13.

Killough and TCS also allege that when Killough decided to exercise his right to have the TCS-related contracts transferred to TCS, Monkress discharged Killough. *Id.* at 14. However, after employees and customers expressed anger about the termination, Monkress offered to rehire Killough and "on behalf of APL, and reoffered to pay Killough 50% of the profits from the TCS-related contracts . . . ." *See id.* at 15. Killough accepted the offer to return, but Monkress and APL did not make the allegedly agreed-upon profit sharing payments to Killough. *Id.* at 16. In addition, Monkress discharged Killough again in September 2015 without transferring the contracts to TCS. *Id.* at 17. This action followed.

---

[2] According to Killough, the "WRAP rate is effectively a multiplier that is used on a direct labor cost to provide the overall hourly cost of work[] performed on a government contract." Doc. 41 at 13.

## III. ANALYSIS

In the Third Amended Complaint, Killough asserts claims against APL and Monkress for fraudulent misrepresentation and fraudulent suppression, and Killough and TCS assert a promissory fraud claim against the defendants. *See* doc. 41 at 19, 22, 25, n. 3-7. The defendants contend that these claims do not satisfy Rule 9, and have moved to dismiss them. Doc. 42 at 3-4. Rule 9(b) requires a party "alleging fraud . . . [to] state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This entails alleging "(1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1991)).

### A.  Fraudulent Misrepresentation and Suppression Claims

To state a claim for fraudulent misrepresentation, Killough must allege facts showing that (1) APL and Monkress made a false representation (2) about a material fact, (3) Killough relied on the false representation, and (4) Killough suffered actual damage as a result of his reliance. *Spooner v. State Farm Mut.*

6

*Auto. Ins. Co.*, 709 So. 2d 1157, 1160 (Ala. 1997) (quotation omitted). And, to state a claim for fraudulent suppression, Killough must allege that (1) the defendants suppressed an existing, material fact, (2) the defendants had a duty to disclose, (3) the defendants had knowledge of the fact, (4) Killough's lack of knowledge induced him to act, and (5) Killough suffered actual damages as a result. *Hardy v. Blue Cross & Blue Shield of Alabama*, 585 So. 2d 29, 32 (Ala. 1991) (citations omitted). The defendants contend that Killough failed to allege a false representation or suppression of a material fact, detrimental reliance, or that he suffered an actual injury from the alleged misrepresentation or suppression apart from the damages caused by the breach of the alleged oral contract. Doc. 42 at 4-12. The court addresses these contentions in turn.

    1.    <u>Whether Killough has pleaded a false representation or suppression of a material fact</u>

To show materiality, Killough alleges that the APL-generated profit statements he received inflated the costs attributed to the TCS-related contracts by overstating "the fringe benefits, overhead, and [general and administrative expenses] line items." Doc. 41 at 9-12. Killough further alleges that "the 'WRAP rate' in the costs on the APL-generated profit statements was substantially higher than the WRAP rate provided to contractors to procure the TCS-related contracts" and that the "higher WRAP rate was the result of APL and Monkress attributing a disproportionately large share of fringe benefits, overhead, and G&A costs to the

7

TCS-related contracts." *Id.* at 12-13. Taking these allegations as true, as the court must at this juncture, they are sufficient to identify the specific alleged false material representations contained in the profit statements APL provided to Killough. To put it in simple terms, Killough maintains that Monkress and APL inflated the costs to reduce the share of the profits he was entitled to receive. Similarly, the allegations are sufficient to show that APL suppressed material information, i.e., the actual costs of the line items reported in the profit statements.

2.  <u>Whether Killough has adequately pleaded reliance</u>

To show reliance, Killough alleges that he relied on the false representations "by continuing his relationship with APL, accepting the profit payments, and not investigating the matter." Doc. 41 at 20. The defendants argue those allegations are not sufficient in part because they do not show that Killough did anything beyond what he was already contractually obligated to do. Doc. 42 at 10. That argument is flawed, however, because Killough was not contractually obligated to continue working with APL.

Perhaps in recognition of this point, the defendants also argue that Killough has not alleged reliance because he failed to allege any facts showing that he changed his course of action based on the alleged misrepresentations in the profit statements. Docs. 42 at 9-10; 46 at 3-4. Under Alabama law, Killough must plead "that the misrepresentation actually induced [him] to change [his] course of

8

action." *Hunt Petroleum Corp. v. State*, 901 So. 2d 1, 4 (Ala. 2004) (citation omitted). And, "[i]f [Killough] would have adopted the same course irrespective of the misrepresentation and would have sustained the same degree of damages anyway, it cannot be said that the misrepresentation caused any damage . . . .'" *Id.* (quotation omitted). Killough contends that his acceptance of inadequate profit payments from APL is sufficient to show reliance and the requisite change of course on his part. Killough cites *Braswell v. ConAgra, Inc.*, 936 F.2d 1169 (11th Cir. 1991), doc. 45 at 7-8, a case in which the defendant contracted with the plaintiffs to raise broiler chickens and paid the plaintiffs based on the weight of the chickens, to support his contention. 936 F.2d at 1172. The plaintiffs in *Braswell* asserted breach of contract and fraud claims based on their allegations that the defendant intentionally underweighed the chickens over an eight-year period, thereby causing the plaintiffs to accept lower payments than they were entitled to under the contract. *Id.* Applying Alabama law under the former justifiable-reliance standard,[3] the Eleventh Circuit affirmed the district court in part because the evidence showed that the "plaintiffs accepted inadequate payment in reliance on the false weights." *Id.* at 1174.

In *Hunt Petroleum Corporation v. State*, the Supreme Court of Alabama criticized the Eleventh Circuit's analysis in *Braswell*, noting that "no Alabama

---

[3] In *Foremost Insurance Co. v. Parham*, 693 So. 2d 409 (Ala. 1997), the Supreme Court of Alabama rejected this standard for the reasonable reliance standard.

9

court has adopted this view or has otherwise excused a party from satisfying the statutory and common-law detrimental reliance requirement." 901 So. 2d at 9, n.8. However, the Court also distinguished *Braswell* by noting that the defendant in *Braswell* had complete control over the payment process, while in *Hunt Petroleum*, "the [plaintiff] retained and ultimately exercised its right at any time to audit [the defendant] and its payments under the lease agreement." *Id.*

Like the defendant in *Braswell*, APL and Monkress had complete control over the payment of Killough's share of the profits, and there is nothing to suggest that Killough retained any authority to audit the payments. In addition, accepting the allegations in the complaint as true, the court can reasonably infer that Killough would not have accepted the allegedly inadequate payments if he had known the true costs associated with the contracts. Consequently, Killough has adequately pleaded that he relied on the purported misrepresentations or omissions.

3. <u>Whether Killough has adequately pleaded damages</u>

To show how the alleged fraud damaged him, Killough alleges that he accepted a smaller share of the profits than he was entitled to under the purported oral agreement. Doc. 41 at 13, 22, 25. APL asserts that these are the same as the damages the plaintiffs seek for the alleged breach of contract claim. Doc. 42 at 11. In general, "[a] mere breach of a contractual provision is not sufficient to support a charge of fraud." *Brown-Marx Assocs., Ltd. v. Emigrant Sav. Bank*, 703 F.2d

1361, 1370-71 (11th Cir. 1983) (citing *McAdory v. Jones*, 71 So. 2d 526, 528 (Ala. 1954)). Thus, to establish fraud, a party must show he suffered "damage *due to fraud* that is separate from damages that may result from any subsequent contractual breach." *Dickinson v. Land Developers Construction Co.*, 882 So. 2d 291, 305 (Ala. 2003) (J. Houston, concurring) (citing *Deupree v. Butner*, 522 So. 2d 242, 245 (Ala. 1988)) (emphasis in original, quotation omitted). While APL may ultimately succeed in showing that the fraud and contractual damages are the same and that the plaintiffs cannot recover damages under both theories, that fact does not support dismissal of the misrepresentation and suppression claims at this juncture because the Federal Rules explicitly allow parties to plead inconsistent claims in the alternative. Fed. R. Civ. P. 8(d) ("A party may set out . . . statements of a claim [] alternatively or hypothetically . . . [and it] may state as many separate claims [] as it has, regardless of consistency."). In addition, allowing Killough to plead alternate theories is especially justified where, as here, the defendants specifically deny the existence of the alleged oral contract. *See* doc. 43 at 3, 24-26.

For all these reasons, the motion to dismiss the fraudulent misrepresentation and suppression claims is due to be denied.

**B. Whether TCS and Killough plead a valid claim for promissory fraud**

Promissory fraud requires showing that "at the time of the alleged misrepresentation (that is, the promise), the defendant intended not to do the act or

11

acts promised, but intended to deceive the plaintiff." *Wright v. AmSouth Bancorporation*, 320 F.3d 1198, 1204 (11th Cir. 2003) (quoting *Goodyear Tire & Rubber Co. v. Washington*, 719 So. 2d 774, 776 (Ala. 1998)). *See also Pinyan v. Community Bank*, 644 So. 2d 919, 923 (Ala. 1994). As this court has noted, "[p]romissory fraud is difficult to prove [] because 'the failure to perform a promised act is not in itself evidence of intent to deceive at the time a promise is made.'" *Tobin v. Auto Club Family Ins. Co.*, 5:13-cv-01392-AKK, 2013 WL 12138874, *3 (N.D. Ala. Nov. 22, 2013) (quoting *Campbell v. Naman's Catering, Inc.*, 842 So. 2d 654, 658 (Ala. 2002)) (alteration in original omitted). Relevant here, Killough and TCS allege Monkress and APL never intended to transfer the TCS-related contracts to TCS. Doc. 41 at 26. To support this contention, they point to the two instances when Monkress discharged Killough and Monkress' request that Killough not discuss the promised transfer with potential new employees. Doc. 45 at 13-14. *See also* doc. 41 at 26. These contentions are unavailing because, first, the general allegation that Monkress and APL had no intention of performing at the time the parties reached an agreement is just a recitation of the elements of the claim, and is not entitled to a presumption of truth. *See, e.g., Iqbal*, 556 U.S. at 678-679. Moreover, even viewed in the light most favorable to the plaintiffs, these three cited instances do not lead to a plausible inference that the defendants never intended to transfer the contracts when the

parties entered their alleged agreement. Instead, based on the pleadings, it is just as plausible that the defendants decided against transferring the contracts to TCS after they learned how lucrative the contracts proved for the defendants. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) ("[C]ourts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.") (quoting *Iqbal*, 556 U.S. at 682). Consequently, Killough and TCS have failed to allege that the defendants never intended to perform as purportedly promised, and the promissory fraud claim is due to be dismissed.

## IV. CONCLUSION AND ORDER

Based on the foregoing, Monkress and APL's partial motion to dismiss, doc. 42, is **GRANTED** as to the promissory fraud claim, and that claim is **DISMISSED WITHOUT PREJUDICE**. The motion is **DENIED** as to the fraudulent suppression and fraudulent misrepresentation claims.

**DONE** the 17th day of April, 2019.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE