# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **DOUG KILLOUGH and TECHNICAL CONSULTING SOLUTIONS, INC.,** )<br>)<br>)<br>) | |
| **Plaintiffs,** ) | Civil Action Number |
| vs. )<br>) | **5:17-cv-00247-AKK** |
| **PHIL MONKRESS and ALL POINTS LOGISTICS, LLC,** )<br>)<br>) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

This action arises from an alleged employment agreement between Doug Killough, the owner of Technical Consulting Solutions, Inc. ("TCS"), and All Points Logistics, LLC ("APL"), a company owned by Phil Monkress.  APL asserts counterclaims against Killough and TCS for allegedly violating the agreement and breaching his fiduciary duty to APL by, among other things, usurping its customers while employed by APL, and taking APL's confidential and proprietary documents after his discharge.  Doc. 54 at 30-63.  This action is before the court on Killough and TCS's motion to dismiss APL's counterclaims.  Doc. 58.  For the reasons explained below, the motion is due to be denied.

# I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'" are insufficient. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint or counterclaim fails to state a claim upon which relief can be granted. When evaluating a motion brought under Rule 12(b)(6), the court accepts "the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). However, "[t]o survive a motion to dismiss, a complaint must . . . 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, the complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## II.   BRIEF FACTUAL BACKGROUND[1]

Killough worked for APL between July 2010 and September 2015 as program manager and principal engineer. Doc. 54 at 31. During his employment, Killough and his company, TCS, approached several APL customers in an attempt to persuade the customers to transfer their business to TCS "by falsely representing that APL agreed to transfer their contracts to TCS." *Id.* at 37. Allegedly, Killough also transferred documents containing APL's confidential and proprietary information and trade secrets from his APL-issued computer to his personal computer and storage devices. *Id.* at 38. Killough and TCS retained and used those documents after Killough's discharge even though APL's policies required him to return all APL property when his employment ended. *Id.* at 39, 43.

## III.   ANALYSIS

APL asserts counterclaims against Killough and TCS for violations of the federal and state trade secrets acts, conversion of documents containing its proprietary and confidential information, and tortious interference with business

---

[1] The facts recited are taken from the counterclaim and are presumed true for purposes of this motion. *See Hunt*, 814 F.3d at 1221.

relations, along with two additional counterclaims against Killough for breach of fiduciary duty and breach of contract. Doc. 54 at 44-63. Killough and TCS argue that APL fails to plead (1) plausible claims based on the alleged wrongful retention and use of APL's trade secrets and confidential documents; (2) a plausible breach of fiduciary duty claim because APL consented to the alleged conflicts of interest; and (3) any wrongful conduct by Killough and TCS to support tortious interference with a business relationship claims. Doc. 58. The court addresses these contentions in turn.

### A. Whether APL Pleads Plausible Claims Based on the Alleged Retention and Use of Confidential Documents

APL asserts four claims against Killough and three claims against TCS based on their alleged wrongful retention and use of APL's confidential and proprietary documents, including APL's proposals to customers, contracts, subcontracts, and purchase orders.[2] Doc. 54 at 38-61. Killough and TCS argue that APL does not plausibly allege that Killough and TCS wrongfully retained APL's confidential or proprietary documents after Killough's discharge. Doc. 58 at 2-6. In particular, they contend that APL's confidentiality-related claims ignore the alleged contract between Killough and APL, which purportedly allowed Killough to keep the documents at issue. *Id.* Based on that contention, Killough

---

[2] The four "confidentiality-related claims" are: (1) Count I, Violation of Defense of Trade Secrets Act; (2) Count II, Violation of Alabama Trade Secrets Act; (3) Count III, Conversion; and (4) Count VI, Breach of Contract, which is asserted only against Killough. Doc. 54 at 44-61.

and TCS argue that the claims are impermissibly vague and overbroad because APL fails to distinguish between "legitimately confidential or proprietary documents" and documents that are rightfully in Killough's and TCS's possession. *Id.*

Killough and TCS's argument is based on the following provision that appears in multiple places in the Employment and Non-Disclosure Agreement:

> All of the client-related information that the employee will be bringing with them shall not be considered as Employer Proprietary, Sensitive, or Confidential Information. Also noted, the employee will be taking the client-related information with them when they make the transition to their own company.

Doc. 54-1 at 3, 4, 5, 10.[3] According to APL, the phrase "client-related information" in the second sentence refers back to the "client-related information that [Killough] will be bringing with them" that is the subject of the first sentence. Doc. 62 at 4. Killough and TCS counter that the phrase in the second sentence refers broadly to any and all client-related information, including contracts, purchase orders, proposals, and pricing information, and not just to the client-related information Killough brought with him to APL. Doc. 58 at 4-5. But, at this juncture and without the benefit of discovery, that contention is belied by the use of the definite article "the" in front of "client-related information" in the

---

[3] The court may consider the agreement because APL attached it to its counterclaim, the agreement is central to APL's claim, and its authenticity is undisputed. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

second sentence.[4]  The use of the definite article indicates that the parties may have intended for the phrase "client-related information" in the second sentence to refer back to the "client-related information that [Killough] will be bringing with them . . . ." *See* doc. 54-1 at 4, 10.  As a result, Killough and TCS have not shown that the alleged contract unequivocally gave Killough the right to take any and all client-related information with him, including APL's alleged proprietary information, when he left APL.  Therefore, he has not shown that APL's confidentiality-related claims are impermissibly vague and overbroad.

Killough and TCS attempt to avoid that conclusion by arguing that interpreting the provision such that the phrase "client-related information" in the second sentence refers to the same information the parties referenced in the provision's first sentence would render the second sentence redundant and meaningless.  Doc. 63 at 3.  But, the phrase "[a]lso noted" at the beginning of the second sentence could indicate that the purpose of the sentence is only to emphasize that Killough would take all of the client-related information he brought with him to APL when he left APL, and the information would not become the property of APL.  Thus, Killough and TCS have not demonstrated that APL's

---

[4] In this context, "the" generally is "a function word to indicate that a following noun or noun equivalent refers to someone or something previously mentioned or clearly understood from the context or situation." *The*, Webster's Third New International Dictionary at 2368 (3rd ed. 1976).

proposed interpretation of the provision violates basic rules of contract interpretation by rendering the provision's second sentence meaningless.

In summary, APL pleads plausible confidentiality-related claims based on its allegations that Killough and TCS wrongfully retained and used APL's confidential documents and information after discharge. This is sufficient for the claims to survive a motion to dismiss.

### B. Whether APL Pleads a Plausible Breach of Fiduciary Duty Claim

APL asserts a breach of fiduciary duty claim against Killough based on allegations that Killough breached a duty owed to it by setting up a competing enterprise, i.e., TCS, and attempting to usurp APL's business while still employed by APL, and by misusing its trade secrets and confidential documents. Doc. 54 at 55-58. "'It is an agent's duty to act, in all circumstances, with due regard for the interests of his principal and to act with the utmost good faith and loyalty. . . . Implicit in this duty is an obligation not to subvert the principal's business by luring away customers or employees of the principal . . . .'" *Systrends, Inc. v. Group 8760, LLC*, 959 So. 2d 1052, 1078 (Ala. 2006) (quoting *Allied Supply Co. v. Brown*, 585 So. 2d 33, 37 (Ala. 1991)). But, there is no breach if the principal "consented to the conflict of interest after full disclosure." *Fisher v. Comer Plantation, Inc.*, 772 So. 2d 455, 466 (Ala. 2000).

7

Killough contends he disclosed to APL that he intended to establish his own company, and APL agreed to transfer the contracts at issue to Killough's new company. Doc. 58 at 6-10. To show APL's purported consent, Killough points to the following language in Addendum A to the Employment and Non-Disclosure Agreement:

> [APL] agrees to support [Killough] in the start up of a new company to include:
>
> a. Support in the legal business creation
> b. Support with the business infrastructure (Finance, Accounting, Contract Management, Human Resource, Payroll, Benefits and Legal)
> c. Both entities will enter into a SBA sponsored Mentor/Protégé Agreement
> d. [APL] will sponsor new business entity in a DSS Top Secrete Facility Clearance
>
> [] When all of the above are complete[,] [APL] will agree to transfer the existing work being performed by [Killough] to the new business entity in a sub contract agreement with [APL].

Doc. 54-1 at 9-10. Killough is certainly correct that these provisions show that APL agreed that Killough would start a new business while employed at APL. *See* doc. 58 at 8. And, the provision shows that APL would support him in the development of the business, and eventually transfer the work Killough performed at APL to the new business entity. However, the referenced language does not establish that APL agreed that Killough could actually begin competing with it while still employed at APL. Moreover, APL's agreement "to transfer the existing

8

work [] performed by [Killough] to the new business entity in a sub[-]contract agreement" does not establish that APL gave consent for Killough to attempt to transfer business from APL to TCS while Killough was still employed by APL, or that APL agreed to transfer any business to TCS other than through a sub-contract agreement with APL. As a result, the referenced language does not establish that APL did in fact consent to the alleged conflicts of interest.

To close, APL has pleaded a plausible breach of fiduciary duty claim. Allegedly, Killough purportedly attempted to usurp APL's customers and divert business to TCS while employed by APL, and misused APL's trade secrets and confidential information. Whether APL can prove its claims is a matter for another day. At this juncture, however, it has pleaded the necessary facts to survive a motion to dismiss.

### C. Whether APL Pleads a Plausible Tortious Interference Claim

Finally, Killough and TCS challenge the claims for tortious interference with contractual and business relations. Doc. 54 at 50-55. To state a claim, APL must allege facts showing: "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger (4) with which the defendant intentionally interfered; and (5) damage." *White Sands Group, L.L.C. v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009). Relevant here, APL alleges among other things that, while employed by APL, Killough was aware of

9

APL's business relationship with Northrop Grumman and helped negotiate multiple sales of equipment to Northrop. Doc. 54 at 51-52. APL further alleges that after his discharge, "Killough used his proprietary knowledge of APL's business and the terms of its contract with Northrop . . . [to] interfere[] with the contract by influencing Northrup to terminate its use of the services of APL Network Engineer Travis Merrell . . . ." *Id.* at 52. And, allegedly, Killough and TCS "interfered with APL's contract and business relationship with Northrop by using Killough's knowledge of APL's business and [t]rade [s]ecrets to procure a personnel supply contract between TCS and Northrop to supply TCS employees into positions that were specific to the APL/Northrop contract." *Id.*

Killough and TCS contend that the tortious interference claim fails because APL's allegations "describe normal, acceptable business competition." Doc. 58 at 11. But, "'justification for interference with contractual or business relations is an affirmative defense to be pleaded and proved by the defendant.'" *White Sands Group*, 32 So. 3d at 12 (quoting *Parsons v. Aaron*, 849 So. 2d 932, 946 (Ala. 2002)). Stated differently, it is not a matter for a motion to dismiss. To support their contention that defense is an appropriate basis for a 12(b)(6) dismissal, Killough and TCS argue that the defense is apparent on the face of the counterclaim. Doc. 63 at 6. In particular, they argue that the allegations in the counterclaim show that Killough had a right to take client-related information with

him upon his discharge and, therefore, APL cannot plead a plausible claim based on Killough and TCS's alleged use of APL's proprietary information and trade secrets. Doc. 58 at 12. As discussed above, however, Killough and TCS have not shown that the Agreement unequivocally provided Killough a right to retain and use <u>all</u> client-related information when his employment at APL ended. *See* pp. 5-7, *supra*.

Killough and TCS argue next that APL does not plead a plausible tortious interference claim because "an employee is not prohibited from using general knowledge about a business gained during employment." Doc. 58 at 12. APL alleges, however, that Killough and TCS used Killough's "proprietary knowledge of APL's business and the terms of its contract with Northrop" to interfere with the contract and also used APL's trade secrets to interfere with its relationship with Northrop. Doc. 54 at 52. And, while an employee may use general knowledge gained during employment to compete with a former employer, he is not free to take and use the employer's trade secrets or proprietary documents after his employment ends. Indeed, the cases Killough and TCS cite recognize that an employee cannot copy "confidential materials from his principal's files and later use[] such materials for his own benefit . . . ." *Gilmore Industries, Inc. v. Ridge*

*Instrument Co.*, 258 So. 2d 55, 59 (Ala. 1972).[5] Consequently, APL has pleaded a plausible tortious interference claim based on its allegations that Killough and TCS used APL's trade secrets and proprietary information to interfere with its contract with Northrop by influencing it to terminate its relationship with APL.

## IV. CONCLUSION

For the reasons discussed above, APL has pleaded plausible claims against Killough and TCS, and Killough's and TCS's motion to dismiss APL's counterclaims, doc. 58, is **DENIED**.

**DONE** the 17th day of January, 2020.

*/s/ Abdul Kallon*
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[5] *See also Movie Gallery US, LLC v. Greenshields*, 648 F. Supp. 2d 1252, 1259 and 1266 (M.D. Ala. 2009) (finding that the plaintiff did not establish its claims based on the alleged use of confidential information and trade secrets because it never presented evidence that the defendant actually used such information or "used anything other than the knowledge and relationships gained from their experience in the industry").