FILED
2022 May-17 PM 12:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **DOUG KILLOUGH and TECHNICAL CONSULTING SOLUTIONS, INC.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**ALL POINTS LOGISTICS, LLC,**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>) Civil Action Number<br>) **5:17-CV-00247-AKK**<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

At the conclusion of a two-week jury trial, the parties submitted a veritable avalanche of filings. After all, the jury could not possibly have reached the right result, at least according to the defendant, All Points Logistics, LLC. Instead, says APL, the verdict against it was the result of multiple errors, including by the court, by plaintiffs' counsel, and by the jury. The court continues to review these motions and notices and, so far, has rejected them. In particular, the court has denied APL's substantive post-trial motions, doc. 247, its request for a permanent injunction, doc. 249, and its attempt to schedule an unnecessary trial on its contractual attorneys' fees claim, doc. 250. Presently before the court is APL's motion for attorneys' fees on its trade-secrets counterclaims. Doc. 211. APL has also filed an accompanying bill of costs and a supporting brief. Docs. 216; 217.

Doug Killough and Technical Consulting Solutions, Inc. oppose the imposition of fees and costs against them and maintain that APL "clearly lost and received an unfavorable judgment" and "has not met its statutory burden of proving willful and malicious appropriation" necessary to shift fees under the federal and Alabama trade-secrets statutes. *See* docs. 219; 231. Killough and TCS also move to strike APL's bill of costs and its reply brief, docs. 231; 238, and they supply their own bill of costs and a supporting brief, docs. 213; 214.[1] For the reasons that follow, although the court will not strike the filings, the court will deny APL its fees and costs and impose Killough's and TCS's costs against it.[2]

## I.

Under Federal Rule of Civil Procedure 54(d), a litigant may recover attorney's fees and costs subject to certain parameters. With respect to costs, "[u]nless a federal statute, these [federal] rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED. R. CIV. P. 54(d)(1). "A claim for attorney's fees and related nontaxable expenses," on the other hand, "must be made by motion unless the substantive law requires those fees to be proved

---

[1] APL also objects to the taxation of costs against it and asks that, should the court impose these costs, the court stay taxation pending the resolution of any post-trial motions and appeals. *See* doc. 232 at 10. The court has since denied APL's substantive post-trial motions. *See* doc. 247. The court will consider staying the judgment in a separate order addressing APL's independent motion to stay, doc. 228.

[2] The court will also deny Killough's and TCS's alternative request to file a sur-reply. *See* doc. 238. The court can parse and reject APL's arguments without yet another filing.

at trial as an element of damages." *Id.* 54(d)(2).  When evaluating claims for fees, "[t]he court may decide issues of liability for fees before receiving submissions on the value of services."  *Id.* 54(d)(2)(C).

Relevant here, under the federal Defend Trade Secrets Act, the court may award "reasonable attorney's fees to the prevailing party" if

> a claim of the misappropriation is made in bad faith, which may be established by circumstantial evidence, a motion to terminate an injunction is made or opposed in bad faith, or the trade secret was willfully and maliciously misappropriated.

18 U.S.C. § 1836(b)(3)(D).  Thus, "[t]o be eligible, the party seeking fees (1) must prevail and (2) it must do so in one of the three listed scenarios that also require a showing of bad faith or malice." *Dunster Live, LLC v. LoneStar Logos Mgmt. Co.*, 908 F.3d 948, 952 (5th Cir. 2018) (citing 18 U.S.C. § 1836(b)(3)(D)).  Similarly, under the Alabama Trade Secrets Act, "the prevailing party" may recover "reasonable attorney's fees" if (1) "[a] claim of actual or threatened misappropriation is made or resisted in bad faith," (2) "[a] motion to terminate an injunction is made or resisted in bad faith," or (3) "[w]illful and malicious misappropriation exists."  ALA. CODE § 8-27-4(a)(2).

## II.

In this case, the jury found that (1) APL breached an agreement to pay Killough profits in 2015, resulting in damages of $293,823.67; (2) APL breached an agreement to novate contracts to TCS, resulting in damages of $1,667,197.24;

3

(3) Killough violated certain provisions of his APL employment agreement, but this caused no damage to APL; and (4) Killough violated the DTSA and the ATSA, but this caused no damage to APL. Doc. 202. The court entered judgment that tracked this verdict and awarded Killough and TCS $1,961,020.91.[3] Doc. 208. The court also taxed costs against APL. *Id.*

APL now claims entitlement to attorneys' fees on its trade-secrets counterclaims, doc. 211, and both parties seek their respective costs, docs. 213; 216.

### III.

APL cannot recover fees or costs under the DTSA or the ATSA because APL neither prevailed under these laws nor established that its trade secrets "[were] willfully and maliciously misappropriated." *See* FED. R. CIV. P. 54(d); 18 U.S.C. § 1836(b)(3)(D); ALA. CODE § 8-27-4(a)(2).[4]

---

[3] In the instant filings and elsewhere, APL takes issue with the judgment in part because the jury did find that Killough violated federal and state trade-secrets law—just not that these violations caused any injuries to APL. It is true that resulting harm is not an element of a misappropriation claim under the DTSA or the ATSA. *See Rotor Blade, LLC v. Signature Util. Servs., LLC*, 545 F. Supp. 3d 1202, 1221 (N.D. Ala. 2021); *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1293 (M.D. Fla. 2018). The court accordingly amended the judgment to reflect this correction, although, the court notes, APL did not seek this specific modification. *See* doc. 248. However, these facts do not change the analysis here because, as explained, APL did not "prevail" in the relevant sense.

[4] The court employs the same reasoning for the DTSA and ATSA claims. To be sure, in some situations, state law may award fees more generously than federal law. *See, e.g.*, *Dunster Live, LLC*, 908 F.3d at 952 (recognizing "general state attorneys' fees law that more liberally awards fees"). But here, the relevant components of the DTSA and ATSA utilize identical or near-identical language. *Compare* 18 U.S.C. § 1836(b)(3)(D) *with* ALA. CODE § 8-27-4(a)(2). *See also Parker v. Petrovics*, No. 2:19-CV-00699-RDP, 2020 WL 3972761, at *4 (N.D. Ala. July 14, 2020) ("The language in the ATSA is nearly identical to that in the DTSA."). Additionally, the ATSA

A.

At a minimum, the DTSA and the ATSA clearly require the attorney-fee claimant to be "the prevailing party." *See* 18 U.S.C. § 1836(b)(3)(D); Ala. Code § 8-27-4(a)(2). Indeed, "[e]rasing 'prevailing party' from the fee statute would be especially troubling because it is a term of art that Congress has used in numerous attorney's fees statutes" to convey a particular meaning. *See Dunster Live, LLC*, 908 F.3d at 952 (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602–03 (2001)). By using "prevailing party," "Congress 'knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.'" *Id.* at 953 (quoting *Morissette v. United States*, 342 U.S. 246, 263 (1952)). The term refers to a "party in whose favor a judgment is rendered," that is, "one who has been awarded some relief by the court."[5] *Buckhannon*, 532 U.S. at 603.

---

explicitly addresses trade-secrets violations and their remedies, not just attorneys' fees generally, and the law "is modeled after and closely parallels the Uniform Trade Secrets Act" for that purpose. *See Gulf S. Comms., Inc. v. Woof Inc.*, No. 1:21-cv-40-ECM, 2021 WL 2405199, at *7 (M.D. Ala. June 11, 2021) (internal quotation marks omitted); Ala. Code § 8-27-6 Comment. Moreover, where Alabama law authorizes such fees, the court has "discretion" to award reasonable attorneys' fees guided in part by "the measure of success achieved." *See Eagerton v. Williams*, 433 So. 2d 436, 450 (Ala. 1983); *Clement v. Merchants Nat'l Bank of Mobile*, 493 So. 2d 1350, 1355 (Ala. 1986); *Peebles v. Miley*, 439 So. 2d 137, 140 (Ala. 1983). For all these reasons, the ensuing analysis applies equally to APL's ATSA-based claim.

[5] *See also Party*, Black's Law Dictionary (11th ed. 2019) (defining "prevailing party" as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded," as in, "in certain cases, the court will award attorney's fees to the prevailing party").

5

In this case, APL has not "been awarded some relief by the court." *See id.* In the amended judgment, the court stated:

> As to APL's counterclaims, the jury found that APL proved that Killough misappropriated its trade secrets but failed to prove (1) damages to APL caused by the misappropriation, (2) the damages prong of its breach of contract claim, and (3) its breach of fiduciary duty and duty of loyalty claim. In accordance with the jury's verdict, judgment is **ENTERED** against APL in the amount of $1,961,020.91 as to Killough's and TCS's claims and in favor of Killough and TCS as to APL's counterclaims, with the exception of the trade-secrets claims. As to the trade-secrets claims, judgment is **ENTERED** against Killough without any damages. Costs are taxed against APL.

Doc. 248 (partially amending doc. 208). Although establishing that Killough misappropriated APL's trade secrets may reflect a symbolic success, APL did not prove its entitlement to any kind of relief.[6] Because the verdict demonstrates that Killough's conduct did not actually injure APL, the court has no harm to remedy through, for instance, a damages award. Accordingly, the court cannot fairly say that APL prevailed on its DTSA or ATSA claims, and neither statute permits the recovery of attorneys' fees in this context.

B.

Additionally, even if APL had "prevailed" on these claims, it has not met at least one statutory prong for recovering fees. The fee provision of the DTSA reads:

---

[6] On APL's motion, the court reviewed the evidence and found that the weight of it supports the verdict. *See* doc. 247 (denying APL's post-trial motions). The court also denied APL's motion for an injunction under the DTSA and ATSA as moot, doc. 249, so this request cannot support the attorneys' fees claim, either. Taken collectively, the jury verdict must stand, and APL failed to prove its entitlement to legal or equitable relief based on the misappropriation.

6

> [I]f a claim of the misappropriation is made in bad faith, which may be established by circumstantial evidence, a motion to terminate an injunction is made or opposed in bad faith, or the trade secret was willfully and maliciously misappropriated, [a court may] award reasonable attorney's fees to the prevailing party.

18 U.S.C. § 1836(b)(3)(D).[7] Although APL claims willful and malicious misappropriation, docs. 211 at 3; 225 at 4–5, it fails to buttress this contention.

In its motion, APL asserts without any support that "[it] has been required to retain the services of counsel to pursue this action, and willful and malicious misappropriation exists." Doc. 211 at 3. Perhaps viewing the error of this strategy, APL expounds on this conclusory statement in its reply brief, where it adds that "Killough and TCS, through their agents (lawyers) refused repeatedly for months to return APL's documents to APL and continue to keep them after agreeing to return them in mid-2019 although they already had them since in 2017 or 2018."[8] Doc. 225 at 4. As Killough and TCS observe, "[i]n effect, APL is accusing counsel for Killough and TCS of willfully malicious conduct in this litigation" as a basis for fee-shifting. *See id.* at 2 n.1.

---

[7] Likewise, in relevant part, the ATSA "authorize[s] the recovery of attorneys' fees upon proof of the 'willful and malicious misappropriation' of a trade secret." *Utility Automation 2000, Inc. v. Choctawhatchee Elec. Co-op., Inc.*, 298 F.3d 1238, 1247 (11th Cir. 2002); Ala. Code § 8-27-4(a)(2).

[8] Killough and TCS seek to strike or to respond to this contention, which APL raises for the first time in the reply brief. Doc. 238. As noted, however, the court can address this without an additional response. Also, the court sees no reason to strike the reply, given that it expands, albeit significantly, on a claim APL makes in its opening brief.

7

But contrary to APL's contention, doc. 225 at 4, APL did not prove that Killough, through his counsel, willfully and maliciously misappropriated APL's trade secrets. True, the jury found that Killough violated the DTSA and the ATSA (without causing harm to APL). *See* doc. 202 at 5–6. However, while APL insists that it "demanded repeatedly the return of its documents with trade secrets" and that "Killough and TCS, through counsel, refused repeatedly to return them," doc. 225 at 4, nowhere in the verdict did the *jury* find that Killough engaged in willful and malicious misappropriation. The verdict form asked whether APL proved "by clear and convincing evidence that Killough and TCS consciously or deliberately acted toward APL with oppression, fraud, wantonness, or malice" with respect to the DTSA and the ATSA claims, to which the jury answered in the negative. Doc. 202 at 6. APL provides no authority for the idea that the court can make this finding, particularly as it is contradicted or undermined by the jury's own verdict.[9] Taken together, APL fails to support its claim that Killough willfully and maliciously misappropriated its trade secrets, and as a result, APL cannot recover attorneys' fees on this ground, either.

---

[9] With respect to the DTSA claim, the court instructed the jury: "If you find that Killough and/or TCS have engaged in willful and malicious misappropriation of the trade secret, you may award 'exemplary' damages, that is, damages meant to make an example of Killough and/or TCS." Doc. 200 at 22. And with respect to the ATSA claim, the court instructed the jury that before it could award punitive or exemplary damages, it "must have decided to award APL compensatory or nominal damages" and "APL must have proved by clear and convincing evidence that Killough consciously or deliberately acted toward APL with fraud, wantonness, or malice." *Id.* at 29. The jury did not award punitive or exemplary damages on either claim. *See* doc. 202 at 6.

C.

For similar reasons, APL cannot recover costs on these counterclaims. Like the DTSA and the ATSA, Rule 54(d) provides that "the prevailing party" can recover costs other than attorneys' fees, and "[u]sually the litigant in whose favor judgment is rendered is the prevailing party for purposes of [R]ule 54(d)." *See* FED. R. CIV. P. 54(d)(1); *Myricks v. Fed. Res. Bank of Atlanta*, 480 F.3d 1036, 1043 (11th Cir. 2007). Though a party "need not prevail on all issues to justify a full award of costs," a prevailing party must obtain a favorable judgment on at least *some* of its claims. *See Head v. Medford*, 62 F.3d 351, 354–55 (11th Cir. 1995). In this case, Killough and TCS prevailed on most of their claims, and the jury awarded them nearly $2 million in damages. *See* doc. 202. By contrast, APL failed to (1) establish liability on several of its claims and (2) prove damages on any of its claims. *See* docs. 202; 208. As a result, the judgment explicitly "taxed [costs] against APL." Docs. 208; 248. In sum, the court sees no basis to award APL, the losing party, any costs,[10] and instead, the court will—consistent with the judgment—tax costs against APL.

**IV.**

The court turns to Killough's and TCS's bill of costs. *See* docs. 213; 214.

---

[10] Also, even if the court did consider APL a "prevailing party," the court has discretion to deny costs. *See Head*, 62 F.3d at 354. Indeed, APL itself recognizes that "Rule 54's language vest[s] courts with the discretion to disallow costs." Doc. 232 at 2. Because Killough and TCS succeeded on the thrust of their claims and obtained a mostly favorable judgment, and because APL failed to prove Killough's conduct caused it any harm, the court has further reason to deny APL costs.

9

A.

The court may "tax as costs" to the prevailing party any clerk and marshal fees, "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case," "[f]ees and disbursements for printing and witnesses," and copying fees "where the copies are necessarily obtained for use in the case." FED. R. CIV. P. 54(d); 28 U.S.C. § 1920. Killough and TCS obtained a judgment and relief, given that the jury found in favor of most of their contractual claims and awarded them almost $2 million in damages. *See* doc. 202; *Myricks*, 480 F.3d at 1043; *Head*, 62 F.3d at 354–55. A few general principles govern the costs Killough and TCS, as the prevailing parties,[11] may receive.

For one, the court typically will not tax costs for witnesses who are also "parties in interest" in a case. *See United States E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000). The court may tax deposition costs "of witnesses on the losing party's witness list" because listing those witnesses demonstrates, in part, the possible need to use the deposition transcripts for cross-examination. *See id.* at 621. In addition, "like with depositions, in evaluating copying costs, the court should

---

[11] APL urges the court to "exercise its discretion and not award costs" to Killough and TCS "[b]ased on the equities, which include [the] [p]laintiffs' misconduct." Doc. 232 at 1. In support, APL suggests that Killough and TCS acted in bad faith or unnecessarily prolonged the litigation by continuously misappropriating APL's documents. *See id.* at 3. The court has already rejected the foundation of this claim in light of APL's failure to prove malice to the jury, *see* doc. 202, and disagrees with APL that the "equities" weigh against taxing Killough's and TCS's costs merely because the jury found liability—and no damages—on APL's trade-secrets claims.

10

consider whether the prevailing party could have reasonably believed that it was necessary to copy the papers at issue." *Id.* at 623.  Finally, private process server fees may be taxed if they do not exceed the fees authorized by law. *Id.* at 624.

B.

Killough and TCS seek a total of $35,342.46 in costs associated with clerk fees, the service of summons and subpoenas, deposition and trial transcripts, witnesses, and copying and printing.  Doc. 213.  The court reviews the costs by type, beginning with the clerk fees.

1.

Killough and TCS seek $400 for "Fees of the Clerk," doc. 213 at 1, and supply an e-mail documenting a $400 receipt for filing the complaint, doc. 213-2 at 2.  To the extent that the court awards costs, APL does not object to this cost.  Doc. 232 at 10.  Thus, the court will tax as costs the $400 filing fee.  *See* 28 U.S.C. § 1920.

2.

Killough and TCS also bill $85 for the service of a subpoena on Matthew Hammons through a private process server.  *See* docs. 213 at 1; 213-1 at 3; 213-2 at 20.  APL contends that if the court does tax this cost, it should reduce the service fee to $81.  Doc. 232 at 10.  This reduction likely reflects what APL believes it would have cost a U.S. marshal to serve Hammons instead.[12]  Killough and TCS ask for

---

[12] The U.S. Marshals Service collects $65 per hour for service of one item by one marshal, "plus

11

the full $85 "based on the assumption that service would possibly take more than one hour." Doc. 214 at 5–6.  Given that the drive from the federal courthouse in Huntsville to Hammons's home appears to take at least 25 minutes each way, Killough's and TCS's calculation is reasonable and perhaps even less than what a marshal would have collected.  Killough and TCS can recover $85 in service costs.

3.

Killough and TCS ask for $30,420.44 for "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." Doc. 213 at 1.  They attach a spreadsheet of the dates, descriptions, and costs associated with each of these transcripts, which mostly relate to depositions but also pertain to trial.  *See* doc. 213-1 at 2–3.  As an initial matter, the deposition transcripts billed correspond to witnesses on APL's witness list, doc. 148, and can be taxed, *see W&O*, 213 F.3d at 621.  However, APL takes issue with the added costs for expediting certain transcripts, "court reporter appearance fees," and videotaping the depositions, contending that "costs incurred for the convenience of counsel and with no showing of necessity are not taxable." *See* doc. 232 at 5–6 (citing *Nat'l Bancard Corp. v. VISA, U.S.A., Inc.*, 112 F.R.D. 62, 64 (S.D. Fla. 1986)).

---

travel costs and any other out-of-pocket expenses." 28 C.F.R. § 0.114(a)(3).  Hammons apparently lives just over 14 miles from the federal courthouse in Huntsville, and at the federal reimbursement rate, the cost of travel to and from Hammons's home would come to $16.73.  *See* doc. 214 at 5–6. Therefore, if a marshal were to work for one hour, the costs would total about $81.  *See id.*

a.

APL is correct that the court may not tax costs spent to expedite transcripts solely for counsel's convenience. *See Nat'l Bancard Corp.*, 112 F.R.D. at 64; *Atl. Specialty Ins. Co. v. Charlie Adventures, LLC*, No. 13–458–CG–N, 2015 WL 4256224, at *2 (S.D. Ala. July 14, 2015); *George v. Fla. Dep't of Corr.*, No. 07-80019-CIV, 2008 WL 2571348, at *5 (S.D. Fla. May 23, 2008). Six invoices indicate that counsel paid to expedite those transcripts. *See* doc. 213-2 at 4, 6, 10, 13, 14, 15. With the exception of the invoice from Elliott Reporting, Inc., where the "expedite" cost is listed as $195.50, doc. 213-2 at 15, none of these invoices break down the amount spent to expedite the services.[13] As a result, the court cannot discern how much counsel spent purely to expedite these transcripts. For now, the court will not tax the costs of these invoices and will set them aside to give Killough and TCS an opportunity to submit revised invoices that exclude or demarcate the charges spent to expedite, for a reduction of $8,783.50.[14] The court will further subtract the $195.50 expediting cost paid to Elliott Reporting.

---

[13] The website for Veritext Legal Solutions, which counsel used for most of the depositions, states that "[e]xpedited transcripts are charged at an additional percentage of the per-page rate." *Service Information*, VERITEXT LEGAL SOLUTIONS, https://www.veritext.com/service-information (last visited May 10, 2022). However, the website does not provide the per-page rate.

[14] The court subtracts the following expedited-transcript invoices, listed by invoice number:

- AL4071908 - $1,380.74
- AL4067639 - $3,305.89
- AL4187103 - $779.07

13

b.

Similarly, the court will not tax the fees associated with deposition "exhibit management," reporter attendance fees, or videotapes of Monkress's and Smith's depositions, given that APL objected to the videotaping and that Killough and TCS do not explain why the videos, in addition to the transcripts, were necessary. *See Tiara Condo. Ass'n, Inc. v. Marsh USA, Inc.*, 697 F. Supp. 2d 1349, 1370 (S.D. Fla. 2010); *Brown v. Riedl*, No. 3:13-cv-36-J-34PDB, 2017 WL 9360887, at *3 (M.D. Fla. Jan. 18, 2017); *Oliver v. MONY Life Ins. Co.*, No. 2:15-cv-00905-AKK, 2018 WL 11588025, at *2 (N.D. Ala. Feb. 6, 2017). Accordingly, the court will further reduce the transcript costs by $2,449.35, *i.e.*, the sum of the unallowable deposition- and transcript-related costs.[15]

---

- AL4208592 - $384.40
- AL4209505 - $1,553.40

Doc. 213-2 at 4, 6, 10, 13, 14.

[15] The permissible invoices, listed below by number, contain the following unallowable costs:

- CS4062112 - $144.50 (exhibits), $28.00 (delivery)
- AL4086519 - $1,322.00 (videography work)
- 10489 - $29.00 (exhibits), $290.00 (video setup and first hour), $540.00 (additional video hours), $20.00 (video archiving)
- AL4184257 - $5.40 (exhibits)
- 10583 - $0.75 (exhibits)
- AL4205787 - $52.65 (exhibits)
- 2779 - $16.75 (exhibits)
- 14859 - $0.30 (exhibits)

*See* doc. 213-2.

c.

Over APL's objection, doc. 232 at 8, the court will tax the cost of the trial transcripts. Contrary to APL's contention, the trial transcripts were necessary for use in the case. While each trial team had members who could have taken notes during the proceedings, APL's motions before, during, and after the trial certainly required the parties to obtain the transcripts and brief issues during and immediately following the trial. Thus, the award will include the $14,703 spent on these transcripts. Doc. 213-2 at 21.

\* \* \*

In sum, for now, the court will tax $18,601.31 in transcript costs. As necessary, the court will amend this order to also include any allowable costs for the transcripts referenced in footnote 14.

4.

Killough and TCS also seek $56.73 in witness fees for Hammons. Docs. 213 at 1; 213-1 at 3. APL does not object, if the court awards costs, doc. 232 at 10, and so the award will include this $56.73, *see* 28 U.S.C. § 1920.

5.

Finally, Killough and TCS ask the court to tax $4,380.29 in printing and copying costs. Doc. 213 at 1. The amount stems from an invoice from Source One Legal Copy, Inc., that lists the following:

- BLACK & WHITE DOCUMENTS PRINTED – $517.50
- COLOR DOCUMENTS PRINTED – $3,074.76
- NUMBER TABS – $320.78
- DEPO BINDING – $59.50
- P&D – $10.50
- SALES TAX – $397.25

Doc. 213-2 at 17. The court will not tax costs for "shipment of depositions or costs for binders, tabs, and technical labor." *See Watson v. Lake Cty.*, 492 F. App'x 991, 997 (11th Cir. 2012). Accordingly, the award will exclude the costs of the tabs, binding, and "P&D," for a total reduction of $390.78. The court will award printing and copying costs of $3,989.51.

\* \* \*

Altogether, after reviewing Killough's and TCS's bill of costs, doc. 213, the court will tax $23,132.55 under Rule 54(d) and § 1920 at this juncture.

## V.

In closing, the court makes a final remark. Attorneys must zealously advocate for their clients' interests. And from complaint through trial, counsel in this case made diligent efforts to prosecute their cases and defend against the respective allegations. However, even the most assertive of lawyers must recognize when enough is enough. Here, the jury decided in favor of most of Killough's and TCS's claims and effectively against all of APL's counterclaims, the court entered

judgment effecting the verdict, and that verdict has withstood the barrage of post-trial motions filed to attack it. Filing requests for attorneys' fees and costs on the basis of claims you have lost is, put mildly, a futile exercise and an unnecessary inundation of the court's docket and limited resources.

APL's motion for attorneys' fees, doc. 211, and its bill of costs, doc. 219, are **DENIED**. Killough's and TCS's bill of costs, doc. 213, is **GRANTED IN PART**, and the court will tax costs of $23,132.55, plus any allowable costs as referenced in footnote 14, against APL under Rule 54(d) and § 1920. Killough and TCS are **ORDERED** to file invoices that properly delineate those allowable costs by **June 1, 2022**. Otherwise, the court will not tax those invoices. Killough's and TCS's motions to strike or to file a sur-reply, docs. 231; 238, are **DENIED** as moot.

**DONE** the 17th day of May, 2022.

                                        _____
                                          **ABDUL K. KALLON**
                                   UNITED STATES DISTRICT JUDGE